UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| THE UNITED STATES OF AMERICA | 06-CR-392E |
| -vs- | MEMORANDUM and |
| DOUGLAS MATTHEW DREW, | ORDER[1] |
| Defendant. | |

---

On December 22, 2006 defendant Douglas Matthew Drew ("Drew") filed a Motion to Dismiss the instant supervised release violation petition on the ground that this Court lacks jurisdiction over his supervised release. The parties appeared before the Court on December 22, 2006 at which time Drew's counsel argued in support of the Motion and counsel for the government was heard in opposition to the Motion. The Court directed the government to file a written response to the Motion and such was filed with the Court on January 16, 2007.

The relevant facts are as follows. On November 6, 2003 Drew pled guilty in the United States District Court for the Southern District of Florida to a violation of 18 U.S.C. §371 — to wit, conspiracy to introduce an unapproved drug into interstate commerce and to import merchandise into the United States contrary to law. Upon his plea of guilty, he was sentenced to a period of incarceration of 18 months[2] to be followed by 2 years of supervised release. He was released from custody on

---

[1] This decision may be cited in whole or in any part.

[2] Drew was initially sentenced to 21 months' incarceration, but such sentence was later reduced to 18 months' incarceration.

December 28, 2004 and his period of supervised release commenced on that date.[3] As a Canadian national, Drew was deported to Canada after his release from incarceration and was notified not to return to the United States without the prior express permission of the United States Attorney General or the Secretary of Homeland Security.

On June 17, 2005 Drew attempted to re-enter the United States at the Peace Bridge Port of Entry. His attempted entry was not successful and he was arrested and charged with attempted illegal re-entry in violation of 8 U.S.C. §1326(a) and (b)(2). Drew has been detained since his arrest. Drew entered a plea of guilty before this Court on September 8, 2006. On December 15, 2006 the Court sentenced Drew to 21 months' incarceration to be followed by 2 years' supervised release.

On June 29, 2006 the United States District Court for the Southern District of Florida transferred Drew's supervised release to this District subject to this Court's acceptance of the transfer. The Court accepted the transfer on October 5, 2006. The transfer was not electronically filed until November 7, 2006.[4] On November 15, 2006 the government presented the Court with a petition for a warrant for a violation of supervised release based on Drew's attempted illegal re-entry.[5] The Court directed the issuance of a warrant on November 17, 2006.

---

[3]Drew's period of supervised release terminated on December 27, 2006.

[4]The transfer order was filed together with a copy of the indictment, plea agreement, judgment and amended judgment in the Florida case.

[5]The petition charged Drew with violation of the condition of his supervised release that he "not commit another federal, state, or local crime" during the period of supervised release.

Drew now contends that the violation petition must be dismissed because the transfer of his supervised release from the Southern District of Florida to this Court was improper and thus this Court lacks jurisdiction.

The statute authorizing such transfers, 18 U.S.C. §3605, states in part:

> "A court, after imposing sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court.  A later transfer of jurisdiction may be made in the same manner. \*\*\*\*"

18 U.S.C. §3605.  Drew argues that the transfer of his supervision did not satisfy the statute because he was not required to proceed to the Western District of New York as a condition of his supervised release, nor was he permitted to proceed to the Western District of New York because he was deported and has not been permitted to re-enter the United States.[6]  In support of this argument, Drew cites to no supporting law other than the language of the statute itself.  The only case cited by Drew is *United States* v. *Fernandez*, 379 F.3d 270 (5th Cir. 2004), in which the transfer of supervised release and jurisdiction over the violation was held to be proper in the District to which supervised release had been transferred.  Drew argues that his case

---

[6]Drew also complains that the violation petition was not brought for 17 months after his attempt to re-enter the United States, that the violation occurred prior to the transfer of supervised release to this District, and that at the time the transfer was effectuated Drew was not residing in this District as he was housed at a correctional facility in Youngstown, Ohio pursuant to a contract with the United States Marshal.  Finally, Drew complains that neither he nor his counsel was advised that his supervised release was being transferred to the Western District of New York or that the violation petition had been issued until counsel discovered the violation petition on his own.

is distinguishable from *Fernandez* because Drew had been deported and has not been permitted to proceed to any District within the United States.[7]

In *United States* v. *Fernandez*, *supra*, the defendant had been convicted in the Western District of Texas and was sentenced to a term of imprisonment to be followed by a three year term of supervised release. *Fernandez*, 379 F.3d at 271. During the period of supervised release, Fernandez was arrested in the Northern District of Texas and charged with various offenses relating to the transport of illegal aliens. Fernandez had not been granted permission to leave the Western District of Texas. *Ibid*. Notwithstanding, after his arrest and guilty plea to the charges in the Northern District, the Western District commenced a transfer of Fernandez's supervised release to the Northern District. The Northern District accepted the transfer and filed a violation petition against Fernandez based on the criminal conduct he had committed in the Northern District. *Id.* at 272.

In rejecting Fernandez's claim that the transfer of supervised release was improper because he had not been "permitted to proceed" to the Northern District of Texas, the *Fernandez* court stated that

> "once Fernandez was arrested in the Northern District for transporting illegal aliens, he was permitted *by law* to remain in the Northern District while held there on those charges, even though he had gone there in violation of his supervised release. Indeed for purposes of his illegal alien transportation case, Fernandez was *required by law* to be in the Northern District ∗∗∗."

---

[7]Moreover, Drew argues, the fact that he was detained at the border and held in custody does not establish his "presence" in this District under immigration or criminal law. Again, Drew cites no authority for his arguments.

*Fernandez*, 379 F.3d at 273. Notwithstanding Drew's argument that he was prevented at the border from re-entering the United States, Drew is present in this District and was present at the time the violation petition was filed by virtue of this Court's jurisdiction over him with respect to the attempted illegal re-entry charge. The Court sees no distinction from *Fernandez* in determining to exercise jurisdiction over the transferred supervised release and Drew's alleged violation thereof.

Accordingly, the Court concludes that it properly has jurisdiction over Drew's supervised release as transferred from the Southern District of Florida and Drew's Motion to Dismiss the Violation Petition is denied.  The parties are ordered to appear before the Court on Friday, January 19, 2007 at 1:00 p.m. as previously scheduled.

DATED:     Buffalo, N.Y.

January 17, 2007

/s/ *John T. Elfvin*
JOHN T. ELFVIN
S.U.S.D.J.